IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 2:05 cr 139 |
| ) | |
| ) | 18 U.S.C. § 371 |
| v. ) | Conspiracy |
| ) | |
| DONALD G. FARROW, ) | |
| ) | |
| Defendant. ) | |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTION

At all times relevant to this criminal information:

1. The Federal Crop Insurance Corporation (FCIC) was and remains a corporation affiliated with the United States Department of Agriculture (USDA). The FCIC runs the Federal Crop Insurance Program (FCIP), created for the purpose of providing insurance to farmers for unavoidable crop losses. The FCIC provides crop insurance through a reinsurance program under which private insurance companies sell and service crop insurance policies in their own names and the FCIC reinsures a portion of the risks. The FCIC also subsidizes a portion of the insurance premiums on certain policies. The FCIC is managed by the Risk Management Agency ("RMA"), an agency of the USDA. The terms FCIC and RMA are frequently used interchangeably.

2. An FCIC insurance policy would provide payment to a farmer when bad weather (for example, a freeze or hailstorm) or other

unavoidable events caused the harvest for a farm to be less than an amount specified in the insurance contract, or "written agreement," which is usually premised on four or more years of production records for a particular crop grown by a farmer on a specific farm, designated by its unique Farm Serial Number ("FSN").

3. Fireman's Fund Agribusiness, Inc. (Fireman's Fund) is an insurance company that entered into crop insurance policies with farmers, and that has a reinsurance agreement with the FCIC.

4. Defendant DONALD G. FARROW (FARROW) supervised claims adjusters with Fireman's Fund who processed crop insurance claims.

5. On or about March 30, 2000, Fireman's Fund issued a tomato crop insurance policy for a farmer (the "insured farmer") who rented land on the Eastern Shore of Virginia (the "insured acreage") on which he grew tomatoes. This policy, which was issued through an insurance agent located in Accomack County, in the Eastern District of Virginia, provided in relevant part for crop damage coverage as follows:

> a. The policy covered only the production of fresh market tomatoes, as opposed to smaller plum or cherry tomatoes.
>
> b. The policy provided for coverage only when the production on the acreage in question fell below 507 boxes of tomatoes per acre.

2

c. The policy covered the approximately 700 insured acres as one "basic unit," which meant that the yield described in paragraph 5b would be calculated by averaging the production per acre over the entire 700 acres. Although the insured farmer might have qualified for more generous coverage through designation as a "New Producer" or by policies authorizing alternate methodologies for yield loss calculation purposes, the insured acreage did not qualify for a policy applying those methodologies because the insured farmer did not at that time provide adequate production history for the insured acreage.

d. The policy covered only tomatoes planted after April 30, 2000 and before July 1, 2000.

6. On or about July 1, 2000, the insured acreage suffered damage from a hailstorm, after which the insured farmer filed a claim.

## CONSPIRACY

1. The allegations contained in the Introduction are realleged and incorporated by reference as if fully set forth here.

2. From on or about August 1, 2000 through on or about January 29, 2001, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, defendant DONALD G. FARROW unlawfully and knowingly combined, conspired, and agreed with

3

others, both known and unknown, to commit an offense against the United States, that is, to knowingly and intentionally make false statements and reports for the purpose of influencing the Federal Crop Insurance Corporation and any company reinsured by the Federal Crop Insurance Corporation, in violation of Title 18, United States Code, Section 1014.

### Object of the Conspiracy

The object of the conspiracy was for the co-conspirators to obtain money by selling federally insured crop policies, and by encouraging the sale of those policies through the payment of claims that were ultimately reimbursed by the FCIC, regardless of whether the claims were validly covered by the policies in question.

### Ways, Manners, and Means of the Conspiracy

The manner and means used in this conspiracy included the creation and filing of false and inaccurate reports and worksheets concerning insured tomato crops located on the Virginia Eastern Shore.

### Overt Acts

In furtherance of the conspiracy and to effect its objects, the following acts were committed in the Eastern District of Virginia and elsewhere:

1. On or about August 4, 2000, Fireman's Fund sent to the insured farmer an acreage report that had been falsely backdated

4

Case 1:06-cr-00009-MR-DLH   Document 1-3   Filed 02/10/06   Page 4 of 7

to June 27, 2000, to avoid disqualification of the claim because of late filing. This form claimed the planting of 750 acres of tomatoes on the insured acreage between April 3 and June 27, 2000. The insured farmer then signed this form, and the local agent sent this form to Fireman's Fund via facsimile from its offices in Accomack County, in the Eastern District of Virginia.

2. On or about September 2, 2000, defendant DONALD G. FARROW withdrew the insured farmer's claim without the insured farmer's knowledge because the losses claimed would not have been fully covered by the policy issued.

3. On or about October 2, 2000, defendant DONALD G. FARROW sent a cover sheet via facsimile to the insured farmer, who was still unaware that FARROW had withdrawn his previous claim. This transmission directed the insured farmer to write a letter falsely claiming that prior to the hailstorm the insured farmer had submitted 1999 production records to support his expected production for the 2000 crop year, and stating that, contrary to the policy written, he expected the yield for coverage purposes to be calculated separately for each field. FARROW provided the precise language that the insured farmer ultimately used in the letter, which was sent back to FARROW, who then forwarded the letter to Fireman's Fund.

4. On or about November 29, 2000, defendant DONALD G. FARROW signed a document entitled "MPCI Adjuster Field Review

5

Form" accompanied by a document entitled "Adjuster's Special Report in which he falsely claimed that on September 7, 2000, he had visited the insured acreage and noted certain damage when in fact, he had not visited the acreage on that date.

5. On or about November 29, 2000, another Fireman's Fund adjuster, acting at the direction of defendant DONALD G. FARROW, signed false production worksheets indicating that that adjuster had also visited the insured acreage and noted certain damage when in fact, the adjuster had not visited the insured acreage.

6. On or about December 5, 2000, a schedule of insurance on the insured acreage was filed indicating that:

   a. the insured crop consisted entirely of fresh market tomatoes, when, in truth and fact, it also consisted of substantial amount of smaller tomatoes not covered by the policy;

   b. the production guarantee should be broken down by separate acreage units, contrary to the policy actually purchased, which provided that the production guarantee be considered by looking to production of the insured acreage as whole; and

   c. the production guarantee on the various acreages was between 780 and 902 boxes per acre, contrary to the policy actually purchased, which provided that the production guarantee was actually 507 boxes per acre.

6

This schedule of insurance was also supported by production worksheets filed by defendant DONALD G. FARROW. Those worksheets falsely stated that the total production from the insured acreage was 302,172 boxes of tomatoes, when in fact, according to the complete worksheets provided to defendant DONALD G. FARROW by the insured farmer, the total production of the insured acreage was actually 876,217 boxes.

7. On or about January 29, 2001, as a result of the false statements noted previously, Fireman's Fund found that the insured farmer had sustained a loss of $308,573.00. After subtracting an administrative fee credit, interest, and a premium credit from that amount, Fireman's Fund issued the insured farmer a check in the amount of $240,301.00. The FCIC ultimately reimbursed Fireman's Fund for the amount paid out to the insured farmer pursuant to its reinsurance policy with Fireman's Fund.

(In violation of Title 18, United States Code, Section 371.)

PAUL J. McNULTY
UNITED STATES ATTORNEY

By: _____
Michael C. Moore
Assistant United States Attorney
Virginia State Bar Number 34229
8000 World Trade Center
101 W. Main St.
Norfolk, VA 23510
757-441-6331

A TRUE COPY TESTE:
CLERK, U.S. DISTRICT COURT
BY _____ DEPUTY CLERK

7